UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| MARIANO BENJAMIN | § | |
| GUTIERREZ-MUÑOZ, | § | |
| Movant, | § | |
| | § | CIV. NO. 7:22-CV-428 |
| vs. | § | |
| | § | CRIM. NO. 7:19-CR-01097-4 |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

## REPORT & RECOMMENDATION

On December 19, 2022, Movant, Mariano Benjamin Gutierrez-Muñoz, a federal prisoner

proceeding *pro se*, initiated this action by filing a habeas writ pursuant to 28 U.S.C. § 2255, setting

out a variety of claims of ineffective assistance of counsel against Mr. Juan Sonny Palacios, Jr.

("Trial Counsel") alleging that Trial Counsel's ineffective performance prejudiced him in both the

re-arraignment and sentencing proceedings. (Civ. Dkt. No. 1.)[1] On March 13, 2023, Respondent

moved for Trial Counsel's affidavit addressing Movant's claims of ineffective assistance of

counsel. (Civ. Dkt. No. 4.) On March 16, 2023, the court ordered Trial Counsel to provide an

affidavit addressing Movant's claims. (Civ. Dkt. No. 5.) Said affidavit was filed with an

attestation that it was true and correct under penalty of perjury as of May 4, 2023. (Civ. Dkt. No.

9.)[2]

---

[1] The District Court has referred this matter to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and L.R. 72. "Civ. Dkt." references filings filed in this matter; "Crim. Dkt." references filings in the underlying criminal prosecution that is being contested by Movant, *United States v. Gutierrez-Muñoz*, Case No. 7:19-cr-01097-4.

[2] In the initial affidavit filed on April 28, 2023, Trial Counsel did not attest under penalty of perjury to the truth and veracity of the affidavit and did not sign affidavit. (Civ. Dkt. No. 7.) Trial Counsel was ordered to provide affidavit setting out under penalty of perjury, that the answers within the affidavit are true and

1

On May 26, 2023, Respondent filed Memorandum in Opposition to Gutierrez-Muñoz's 28 U.S.C. § 2255 Motion. (Civ. Dkt. No. 12.) On July 5, 2023, Movant filed Motion in Opposition to the United States's Memorandum. (Civ. Dkt. No. 13.)

Based on review of the filings, the affidavit, the record, and relevant case law, this matter is ripe for disposition without a need for hearing. For the reasons expounded upon in this Report and Recommendation, the undersigned concludes that Movant's claims of ineffective assistance of counsel should be denied as Movant has not established that Trial Counsel was deficient in representation or that any prejudice resulted from Trial Counsel's representation.

Therefore, the undersigned recommends that Movant's § 2255 motion (Civ. Dkt. No. 1) be **DENIED**. It is further recommended that Movant's motion (Civ. Dkt. No. 1) be **DISMISSED with prejudice**, and said case be closed. It is also recommended that the District Court **DECLINE** to issue a certificate of appealability in this matter.

## I. BACKGROUND AND PROCEDURAL HISTORY

### a. Investigation, Arrest, Indictment and Re-Arraignment

On July 31, 2019, Texas Department of Public Safety (DPS) Trooper conducted a traffic stop on a blue Ford F-150 driven by Movant in Mercedes, Texas. At the time of the stop, there was one other passenger with Movant, and each admitted to being Mexican Nationals with no permission or authorization to be in the United States. U.S. Border Patrol Agents subsequently met with Movant. Movant, after being advised of his *Miranda* rights,[3] agreed to speak with the

---

correct to best of Trial Counsel's knowledge and ability, and to sign with verification of a notary, said attestation. (Civ. Dkt. No. 8.) The updated affidavit was provided as of May 4, 2023. (Civ. Dkt. No. 9.)

[3] *See Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966) (Before a custodial interrogation, "the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The

agents without counsel representation. Movant also provided both verbal and written consent to the search of his residence by law enforcement in Mercedes, Texas. Both Movant and his passenger were then transported by law enforcement to said residence. Federal and local agents were able to enter the residence with utilization of a key provided by Movant to search the residence. However, agents did not find any other individuals or illegal narcotics or controlled substances within said residence. While on the property, the officers noticed a Ford Explorer and asked Movant about said vehicle. Movant initially claimed the vehicle belonged to a friend but then admitted the vehicle belonged to his wife. Movant stated that there were two speaker boxes within said vehicle and that he recently purchased said boxes. Movant once again gave federal agents both verbal and written consent to search the Ford Explorer and told them that the keys were in the blue Ford F-150. During this time, a canine from the Pharr, Texas police department provided a positive indication of a narcotic odor emitting from the rear trunk of the Ford Explorer. Agents searched the identified area and would find two speaker boxes within the vehicle. Agents withdrew 31 kilograms of crystal methamphetamine from the two boxes. Also, within the vehicle, agents found a briefcase containing U.S. Currency that appeared to be $100 bills wrapped in plastic and rubber bands. After the discovery of the narcotics and money, agents approached Movant and read him the *Miranda* rights in Spanish, his preferred language. Movant waived his *Miranda* rights both verbally and in writing and resumed speaking with the agents. Movant admitted to receiving the boxes from "Primo"[4] and that he was paid $500 to store said boxes. Movant knew there was something "bad" inside the boxes and when asked, clarified that "bad" meant drugs. Movant also

---

defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently."); *see also United States v. Fernandez*, 48 F.4th 405, 410 (5th Cir. 2022).

[4] Agents were unable to identify "Primo." *See* Crim. Dkt. No. 1 at 3.

admitted to holding onto speaker boxes on behalf of "Primo" once before for $500.00. This interview began at 8:46 p.m. and concluded at 9:02 p.m., at Movant's request. Afterwards, Drug Enforcement Administration (DEA) Special Agent (S/A) Ashely Brazelton filed a criminal complaint charging Movant with knowingly and intentionally possessing with intent to distribute approximately 31 kilograms of methamphetamine in violation of 21 U.S.C. § 841. (Crim Dkt. No. 1.) Movant was initiated before a federal magistrate judge on August 1, 2019. Preliminary hearing and detention hearing were scheduled for August 6, 2019.

At the preliminary hearing, DEA S/A Brazelton testified to the facts and circumstances surrounding the arrest of Movant. S/A Brazelton's testimony confirmed the facts as outlined within the criminal complaint. Of particular significance, Agent Brazelton testified that Movant provided both verbal and written consent to search his residence and the noted Ford Explorer. (Crim. Dkt. No. 320 at 7.) Agent Brazelton also testified as Movant's connection to seizure of 55 kilograms of methamphetamine in Waco, Texas.[5] (*Id.* at 8.) On cross examination, Agent Brazelton confirmed that Movant waived his *Miranda* warnings when he spoke to Border Patrol after the initial encounter at the traffic-stop by the state trooper. (*Id.* at 9, 10.) Agent Brazelton also confirmed Movant provided consent to search of residence and vehicle and did not revoke his consent during the search. (*Id.* at 10.) Agent Brazelton further testified that Movant's *Miranda* warnings were provided in Spanish, Movant's preferred language. (*Id.* at 11.) As to the 8:46 pm

---

[5] At the hearing, Agent Brazelton testified the agents also seized some titles to vehicles from Movant's vehicle. Reviewing of these titles revealed that one title was linked to a white pickup truck, which was observed at Movant's residence during the investigation. In February 2019, local law enforcement in Waco, Texas traffic-stopped an individual driving the same white pickup truck, and from said truck, four speaker boxes containing approximately 55 kilograms of methamphetamine were seized. *See* Crim. Dkt. No. 320 at 8.

*Miranda* warnings,[6] Agent Brazelton testified that this one was administered by herself and provided in Spanish, to which Movant gave his waiver and agreed to speak with her. (*Id.*) After about 15 minutes, Movant requested to terminate the interview and Agent Brazelton terminated said interview. (*Id.* at 12.) The cross-examination concluded by Agent Brazelton's confirmation that this request was Movant's first and only time to try to revoke his *Miranda* wavier during the interview. (*Id.*)[7]

On August 13, 2019, a grand jury in McAllen, Texas, handed down a superseding indictment charging Movant with conspiracy to possess with intent to distribute 500 grams or more of methamphetamine and 1 kilogram or more of heroin from August 2018 to the time of indictment, in violation of 21 U.S.C. § 846, 841(a)(1), (b)(1)(A); possession with intent to distribute 500 grams or more, approximately 66.75 kilograms of methamphetamine on or about October 19, 2018, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2; possession with intent to distribute 1 kilogram or more, approximately 10.80 kilograms of heroin, on or about October 19, 2018, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2; and possession with intent to distribute 500 grams or more, approximately 31 kilograms of methamphetamine on or about July 31, 2019, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2. (Crim. Dkt. No. 16.)

On September 9, 2020, before the Honorable Chief Judge Randy Crane, Movant pled guilty to Count 1 of the superseding indictment, charging him with conspiracy to possess with intent to

---

[6] According to the criminal complaint, this *Miranda* warning was administered after the agents seized the speaker boxes containing crystal methamphetamine from Movant's vehicle, along with U.S. currency. *See* Civ. Dkt. No. 1 at 3.

[7] At this hearing, as well as the detention hearing, Movant was represented by the Federal Public Defender's Office in McAllen, Texas (AFPD Judith Pena). (Crim. Dkt. No. 4.) The Public Defender's Office then requested to withdraw due to a conflict-of-interest and Mr. Juan Sonny Palacios ("Trial Counsel") was subsequently appointed to represent Movant. (Crim. Dkt. Nos. 27, 29, 31.)

distribute 500 grams or more of methamphetamine and 1 kilogram or more of heroin from August 2018 to the time of the filing of the indictment, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A). (Dkt. Data Entry dated Sept. 9, 2020.) As part of the plea agreement, the Government agreed to recommend a two-level reduction of the offense level pursuant to U.S.S.G. § 3E1.1(a) if Movant clearly demonstrated acceptance of responsibility and to dismiss at time of sentencing the remaining counts of the superseding indictment. (Crim. Dkt. No. 172.)

Within the plea agreement, the following was set out:

Beginning sometime in August of 2018 and continuing up until August of 2019, the defendants Emmanuel Nunez, Abigail Nunez, Mariano Benjamin Gutierrez-Munoz, Cesar Alexis Herrera Flores, and Zachary Taylor Williamson, entered into an agreement to possess with intent to distribute narcotics.

…

…

In furtherance, of this agreement, [o]n July 31, 2019, Mariano Benjamin Gutierrez Munoz, picked up approximately 31 kilograms of methamphetamine from Herrera which he agreed to further distribute.

(*Id.* at 2 ("Notice of Plea Agreement").)

At the re-arraignment hearing, Movant agreed to appear via video-conference due to the safety precautions enacted by the courts during the coronavirus pandemic. (Crim. Dkt. No. 282 at 4-5.) Movant, after being placed under oath, indicated he was satisfied with his attorney's representation. (*Id.* at 8-9.) Subsequently, Movant pled guilty to Count 1 of the superseding indictment (*id.* at 9-10) and affirmed he understood he had right to trial (*id.* at 13-14) and he also understood that by pleading guilty he would be giving up his right to trial (*id.* at 17). Movant also affirmed that he had reviewed the sentencing guidelines with Trial Counsel and that Movant knew he could be sentenced to prison up to life with a minimum sentence of at least 10 years and fine up to ten million dollars. (*Id.* at 17, 20.) Movant also confirmed that he reviewed said plea

agreement in Spanish with Trial Counsel and he understood the parameters of the plea agreement. (*Id.* at 23, 24.) After being advised of his rights, Movant confirmed that he wanted to continue forward with the plea of guilty. (*Id.* at 25.)

Ms. Patricia C. Profit, the assigned federal prosecutor, then set out the following facts in support of the plea to the Court:

> Beginning sometime in August of 2018 and continuing up until August of 2019, the defendant, Mariano Benjamin Gutierrez-Muñoz entered into an agreement with Mr. Herrera, Cesar Alexis Herrera-Flores, to possess with intent to distribute narcotics. In furtherance of this agreement, on July 31, 2019, [Movant] picked up approximately 31 kilograms of methamphetamine from Mr. Guerrero, which he had agreed that he would further distribute or transport.

(*Id* at 26.)[8] The Court asked Movant, "were the facts stated by the United States Attorney all true and correct?", to which Movant responded, "Yes, sir." (*Id.* at 26.)

### b. Presentence Investigation Report

Prior to the sentencing hearing, a presentence investigation report ("PSR") was completed by the U.S. Probation Department utilizing the 2018 United States Sentencing Guidelines (U.S.S.G.) to determine the sentencing recommendation for the Court. (Crim. Dkt. No. 183, ¶99.)[9] Pursuant to U.S.S.G. § 1B1.3(a)(1)(A) and (B), it was recommended that Movant not only be held accountable for the seizure of 26.51 kilograms of methamphetamine from the incident on July 31, 2019, but also for narcotics seized on the following three incidents – seizures (1) on August 2, 2018, of 20.10 kilograms of cocaine and 27.90 kilograms of d-Methamphetamine Hydrochloride

---

[8] The federal prosecutor references that the narcotics were received from a "Mr. Guerrero" but this was a simple misstatement as the drugs were picked up from Mr. Herrera. *See* Crim. Dkt. No. 183 at 18, ¶70.

[9] Crim. Dkt. No. 183 is the filed Presentence Investigation Report completed by U.S. Probation Department – McAllen Division as of November 10, 2020.

98% purity ("Ice");[10] (2) on October 19, 2018, of 63.41 kilograms of methamphetamine and 10.26 kilograms of heroin; and (3) on November 13, 2018, of 9.50 kilograms of heroin and 4.75 kilograms of cocaine. (Crim. Dkt. No. 183 at 27, ¶ 100.)[11]

1. **Aug. 2, 2018 – 20.10 kg of Cocaine & 27.90 kg of Methamphetamine/ice**

On August 2, 2018, co-defendant Pedro Gonzalez was observed delivering four audio speaker boxes to co-defendant David Zavala in Pharr, Texas. Subsequently, local law enforcement traffic-stopped the vehicle driven by David Zavala. This traffic stop led to the seizure of the four audio speaker boxes that was determined to contain 20.10 kilograms of cocaine and 27.90 kilograms of d-Methamphetamine Hydrochloride, with a purity strength of 98 percent ("Ice"). (*Id.* at 6, ¶¶19-21.) During the transaction, agents observed Movant's vehicle at the location where the transaction occurred and, after the transaction, observed Movant meeting with Pedro Gonzalez. (*Id.* at 7, ¶22.) In post-arrest statement provided on November 19, 2018, Pedro Gonzalez stated that he imported narcotics in concealed audio speaker boxes and upon entry into the United States, said boxes were delivered to Movant and other unidentified co-defendants. (*Id.* at 6, ¶20.)

2. **October 19, 2018 – 63.41 kg of Methamphetamine & 10.26 kg of Heroin**

On October 19, 2018, a DPS trooper conducted a traffic stop on a vehicle being driven by Alexandra Briones in Fort Bend County, Texas. At the time of the stop, Alexandra Briones was traveling with her three minor children and her mother. Alexandra Briones provided consent to

---

[10] Pursuant to the Sentencing Guidelines, "Ice" is defined as a mixture or substance containing d-Methamphetamine Hydrochloride of at least 80 % purity. U.S.S.G. § 2D1.1, Notes to Drug Quantity Table (C). The relevancy, as will be set out in this Report and Recommendation, is that an individual is held to greater liability within the Sentencing Guidelines for trafficking in such pure form of methamphetamine.

[11] Weights were either net weight based on lab reports or an estimated gross net weight after a five percent reduction for wrapping. (Dkt. No. 183 at 27, ¶100.)

search the vehicle.  Upon search of the vehicle, the state trooper would initially find two metal boxes that were welded closed, and two audio speaker boxes and a wooden box covered in grease and wrapped in a trash bag.  A law enforcement narcotics detection dog would alert for narcotics as to the audio speaker boxes in the trunk area of the vehicle.  After Alexandra Briones and the vehicle were moved to the local DPS station, agents conducted an additional search of the vehicle and found two additional audio speaker boxes and two additional wooden boxes underneath the back seat's second row area.  Agents found that each of these audio speaker boxes contained four bundles of methamphetamine and each of these wooden boxes contained two bundles of methamphetamine.  The metal boxes initially observed at the traffic stop were discovered to contain five bundles of heroin, each of the speaker boxes contained four bundles of methamphetamine, and the wooden box contained two bundles of methamphetamine.  Overall, twenty-two bundles of methamphetamine were seized with a total gross weight of 66.75 kilograms and 10 bundles of heroine were seized with a total gross weight of 10.80 kilograms.  Based on the investigation, agents discovered that Alexandra Briones was working under the direction of Movant and Alexandra Briones was identified as Movant's romantic partner.  Further, Movant was identified as having provided money/deposit for Alexandra Briones' and her mother's bond release. (Crim. Dkt. No. 183 at 7, ¶¶23-25.)

### 3. **November 13, 2018 – 9.50 kg of Heroin & 4.75 kg of Cocaine**

On November 13, 2018, a deputy sheriff out of Hoover/Jefferson County, Alabama conducted a traffic stop on a vehicle driven by an individual, identified within the PSR as co-conspirator #1 and with one passenger, identified as co-conspirator #2.  A search of the vehicle led to the discovery of three metal boxes which were welded closed; a search of said boxes led to the discovery of five tubes containing 10 kilograms (gross weight) of heroin and 5 kilograms (gross

weight) of cocaine. Upon being read and waiving *Miranda* rights, the driver/co-conspirator #1, stated the vehicle was being driven on behalf of Movant as repayment to Movant for a $3,000 loan previously provided by Movant to co-conspirator #1. Co-conspirator #2, after being read and waiving *Miranda* rights, identified Movant as the coordinator for the transportation of narcotics, and several individuals would transport said narcotics under Movant's direction. Co-conspirator #2 explained how the narcotics were smuggled into the US in audio speaker boxes and then Movant would retrieve said boxes for further distribution. Specifically, once in Movant's possession, he would take the audio speaker boxes to his place of business, a junkyard, and place them in welded-shut metal boxes for further distribution. (Crim. Dkt. No. 183 at 28-29, ¶¶23-29.) It was further explained that co-conspirator #2 and Movant would wear mechanic shirts to give the impression they were working at the noted junkyard. (*Id.* at 9, ¶29.) Co-conspirator #2 also explained that they were instructed to deliver the metal boxes first to Houston, Texas and then to Atlanta, Georgia, at the direction of Movant. (*Id.* at 9, ¶30.) DEA agents, through surveillance, were able to identify Alexandra Briones as one of the individuals in a vehicle being driven in tandem with the drug-laden vehicle at the time of the traffic stop. (*Id.* at 9, ¶31.)

### 4. **July 31, 2019 – 26.51 kg of Methamphetamine**[12]

Movant's involvement in this transaction leads to his arrest, as outlined above. Prior to the traffic stop on July 31, 2019, law enforcement officers observed co-defendant Cesar Herrera meet with Movant at flea market in Donna, Texas, and provide Movant with two speaker boxes. Agents then followed Movant as he drove to his residence in Mercedes, Texas. It was after Movant left said residence that the traffic stop was conducted. (Crim. Dkt. No. 183 at 18-19, ¶¶70, 71.) During

---

[12] As previously noted, the gross weight of the narcotics was originally determined by the agents to be 31 kg of methamphetamine; the net weight after laboratory analysis was determined to be 26.51 kg. of d-Methamphetamine Hydrochloride with 98% purity strength. (Crim. Dkt. No. 183 at 20, ¶76.)

the course of the search of Movant's residence and the vehicle, Movant initially claimed the vehicle

(where the drugs were found) belonged to his friend but then stated that the vehicle was owned by

his spouse. (Crim. Dkt. No. 183 at 19, ¶72.) Besides the narcotics found in two speaker boxes,

agents also found in a cloth briefcase, seized from the vehicle, $10,000 in U.S. Currency and

multiple vehicle titles. (*Id.*) After the seizure of the narcotics and money, Movant was transported

to the DPS office for interview. Post-*Miranda*, Movant indicated that he was paid $500 to store

the boxes and this was his second time to assist in the storing of the boxes. (*Id.* at 19, ¶73.)

Overall, the PSR writer recommended Movant should be held responsible for each of the

four drug loads above, which resulted in a base offense level of 38, pursuant to U.S.S.G. §

2D1.1(c)(1), for offenses involving 90,000 kilograms or more of "*converted drug weight*." (*Id.* at

28, ¶103.) As noted, the seizures involved cocaine, methamphetamine, "Ice," and heroin.[13]

Therefore, pursuant to U.S.S.G. §2D1.1, comment. n.8(B), the drug conversion table was utilized

to convert each of the seized narcotics to a "converted drug weight" to determine the total amount

of drugs seized and the base offense level. (*Id.* at 102) (referencing the conversion table set out in

U.S.S.G. § 2D1.1, comment. n. 8(D).) Total amount for all the seized narcotics resulted in a

"converted drug weight" of 1,239,750 kilograms. (*Id.*)

Additionally, through the DEA-led investigation, agents found that the seized narcotics

were imported from Mexico into the United States and that Movant utilized tractor trailers to

import said narcotics; therefore, a two-level increase was assessed per U.S.S.G. § 2D1.1(b)(5).

(*Id.* at 28, ¶104.)

---

[13] Based on DEA lab reports, methamphetamine seized on Aug. 2, 2018, and July 30, 2019, was determined
to be d-Methamphetamine Hydrochloride with a purity in excess of 80 percent. (Crim. Dkt. No. 183 at 6,
¶21; 20, ¶77.) As noted, "Ice" is defined as a mixture or substance containing d-Methamphetamine
Hydrochloride of at least 80 % purity. *See supra* n.10.

Co-conspirator #2 stated that Movant utilized the junkyard as the premises to unload narcotics-laden audio speaker boxes from tractors-trailers to then be placed in welded metal boxes for further distribution. Such work would be completed by co-conspirator #2 and Movant wearing mechanic shirts to give an air of legitimacy to the work and business. The case agent stated there was no indication that the junkyard was utilized for a legitimate purpose. Therefore, a two-level increase was assessed for Movant maintaining premises for the purpose of manufacturing or distributing a controlled substance per U.S.S.G. § 2D1.1(b)(12). (Crim. Dkt. No. 183 at 29, ¶105.)

Based on the investigation, the PSR writer concluded that Movant's actions were more extensive than other co-conspirators for the following reasons: Movant was known to be an associate of David Zavala and Pedro Gonzalez; Pedro Gonzalez imported narcotics-loaded audio speaker boxes from Mexico directly to Movant; and Alexandra Briones, co-conspirator #1, and co-conspirator #2 were each transporting narcotics at the direction of Movant. According to DEA-monitored calls, Movant contacted a confidential human source (CHS) in attempt to find a driver to move "work" (believed to reference narcotics smuggling) from Texas to Georgia. Therefore, there was three-level assessment for Movant being a manager or supervisor (but not organizer or leader) for criminal activity involving five or more participants or otherwise extensive per U.S.S.G. § 3B1.1(b). (*Id*. at 29-30, ¶¶108-109.)

These assessments resulted in an adjusted base offense level of 45. However, considering this was a rare instance of the offense level being in excess of 43, it was reset at 43. (*Id*. at 30, ¶113); *see* U.S.S.G. Ch. 5, Pt. A, comment. 2 ("An offense level of more than 43 is to be treated as an offense level of 43."). Since Movant had no prior convictions, the total criminal history score was calculated at zero, and Movant thus fell into criminal history category I. (Crim. Dkt. No. 183 at 30, ¶116.) A total offense level of 43 and a criminal history category I yielded a

guideline sentencing recommendation of life imprisonment. (Crim. Dkt. No. 183 at 35, ¶138.) However, if the Court granted Government's two-level reduction for acceptance of responsibility agreed to in plea agreement, and if the Government moved for the additional one-level reduction for acceptance, then the total offense level of 45 would be reduced to 42, and with a criminal history category I, the range of punishment would be 360 months to life. (*Id.*); *see also* U.S.S.G. Ch 5, Pt. A (Sentencing Table).

Prior to the sentencing hearing, Trial Counsel filed objections to the sentencing report on November 18, 2021. (Crim. Dkt. No. 264.) Trial Counsel argued that Movant did not have any knowledge that the drug-laden speakers were imported from Mexico and there was no evidence within the PSR to support the enhancement under U.S.S.G. § 2D1.1(b)(5). (*Id.* at 1-3.) Trial Counsel also argued "Defendant maintained the junkyard and shop prior to the drug activities and sold parts from the junkyard and handled mechanic work at the shop prior and during drug activities." (*Id.* at 3.) Further, Trial Counsel argued while it was true that Movant "used his shop to weld the narcotics into the metal boxes, these actions were not done consistently and continuously." (*Id.*) Therefore, since junkyard was a regular business and the connection to drug activity was sporadic, the enhancement for maintaining of premises per U.S.S.G. § 2D1.1(b)(12) was unwarranted. Finally, Trial Counsel objected to role adjustment enhancement since another co-defendant, instead of Movant, was responsible for the importation of the narcotics and others handled the receipt of the narcotics from Mexico. (*Id.* at 4.) Movant's role was limited to welding boxes and recruiting drivers to transport the narcotics and therefore a two-level increase was warranted per U.S.S.G. §3B1.1(c) instead of the noted three-level adjustment per U.S.S.G. §3B1.1(b). (*Id.*) Trial Counsel also filed an "Acceptance of Responsibility" on November 19, 2021. (Crim. Dkt. No. 269.) Within the Acceptance, Movant accepted responsibility for

conspiring with others to possess with intent to distribute narcotics and that Movant "picked up from Cesar Alexis Herrera and agreed to possess and distribute 31 [k]ilograms of methamphetamine." (Crim. Dkt. No. 269.)

### c. Sentencing Hearing

The sentencing hearing was held on November 30, 2021. At the beginning of the hearing, the Court confirmed with Movant that he had an opportunity to discuss the PSR with Trial Counsel. (Crim. Dkt. No. 283 at 3.) The Court further confirmed with the federal prosecutor, Ms. Profit, that Government would move for the additional third point for acceptance of responsibility. (*Id.*) Then, the Court addressed Trial Counsel's objections.

As to the issue of importation, Trial Counsel argued that there was only one seizure from a port-of-entry during the overall investigation and that specific seizure was not connected to Movant. (*Id.* at 5.) The Court noted, however, that co-conspirators had identified Movant and his role within the trafficking conspiracy. (*Id.* at 6.)

As to the use of premises enhancement, Trial Counsel articulated that the junkyard was a legitimate business that happened to be utilized in connection with drug-trafficking. (*Id.* at 7.) The Court quoted application note: "[m]anufacturing or distributing need not be the sole purpose for which the premises was maintained but must be one of the defendant's primary or principal uses for the premises." (*Id.* at 8 (quoting U.S.S.G. § 2D1.1(b)(12), comment. n.17).)[14]   When

---

[14] The complete commentary note is as follows:

> Application of Section (b)(12). – Subsection (b)(12) applies to a defendant who knowingly maintains a premises (*i.e.*, a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution.

asked to present evidence of Movant's legitimate business, Trial Counsel argued the vehicle titles collected by agents in the course of the investigation were examples of records kept by Movant's business. (Crim. Dkt. No. 283 at 9.) Trial Counsel was not able to present evidence for Movant's business, but reiterated Movant was a mechanic working on cars and tires and kept receipts. *See id.* at 10 ("[H]e worked on scraps, he sold part[s].") The Court noted that the case agent informed the PSR writer that there was no evidence that the junkyard was a legitimate business. (*Id.* at 11 (citing to Crim. Dkt. No. 185 at 29, ¶105).) The Court further noted that the issue was not frequency of use, "[b]ut the test is . . . what is the primary purpose?" (*Id.* at 12.) Upon the Court's subsequent request to present any evidence of Movant's mechanic business, Trial Counsel repeated that junkyard was a business used by Movant "to buy and sell scraps, buy and sell metal, and buy and sell used car parts." (*Id.*)

As to role adjustment enhancement, Trial Counsel advocated for a two-level computation instead of a three-level enhancement because Movant was "just the transportation." (*Id.* at 13.) In rebuttal, the federal prosecutor emphasized co-conspirators' statements that identifying Movant as the one directing and recruiting narcotics drivers. The Court advised that he would consider both parties' arguments. (*Id.*) The Court also provided an opportunity for Movant to speak, and Movant asked for forgiveness. (*Id.*)

---

Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (*e.g.*, owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.

Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substances and how frequently the premises was used by the defendant for lawful purposes.

U.S.S.G. § 2D1.1, comment. n.17.

The Court proceeded to find that the base offense level of 38 was appropriate and each of the noted enhancements were warranted. The Court stated that, first, "Mr. Guttierez was fully aware these drugs were being crossed into this country from Mexico," second, the primary purposes of the junkyard was the storage and distribution of drugs "rather than any legitimate business," and, third, a three-point enhancement was warranted as Movant "was head of the transportation cell [that] involved a number of people, . . . , as reflected in the Presentence Report." (Crim. Dkt. No. 283 at 14-15.) Therefore, the Court determined that the adjusted offense level was 42 and the range of punishment was 360 months to life.[15] (*Id.* at 15.) The Court then sentenced Movant to 360 months in prison, followed by a mandatory supervision of five years, no fine, and $100 special assessment as required by law. (*Id.* at 16); *see also* Crim. Dkt. No. 270 (Judgment).

### d. Appeal

Movant timely appealed the sentence to Fifth Circuit Court of Appeals. The Judgment and Conviction was affirmed in an unpublished opinion handed down on October 4, 2022. *See United States v. Gutierrez-Muñoz*, No. 21-40903, 2022 WL 5102009 (5th Cir. Oct. 4, 2022). The only issue on appeal was whether the Court erred in finding that Movant "maintained" a junkyard "for the purpose of manufacturing or distributing" methamphetamine per U.S.S.G. § 2D1.1(b)(12). *Id.* at *1. In *per curiam* opinion, the Fifth Circuit panel held that "*after reading the record*, we find the district court could plausibly determine that one of the junkyard's primary uses was to

---

[15] Court found that there was no need for a reduction of the offense level from 45 to 43 since the total adjusted level, after all enhancements and acceptance of responsibility was 42. (*Id.* at 15.) Based on quantity of narcotics, the base offense level started at 38, then plus 2 for importation, plus 2 for use of premises for drug trafficking purposes, and plus 3 for role adjustment, led to adjusted offense level of 45; but with minus three for acceptance the total adjusted level became 42. At level 42, there was no need for any adjustment. *See* U.S.S.G. Ch. 5, Pt. A, comment. 2 ("An offense level of more than 43 is to be treated as an offense level of 43.").

distribute methamphetamine." *Gutierrez-Muñoz*, 2022 WL 5102009 at *2 (emphasis added). In reaching this conclusion, the appellate court panel noted that the information provided within the PSR was reliable and no evidence was presented such as "receipts, contracts, or any other routine documents evidencing the operation of a business." *Id*. Further, evidence showed Movant utilized the property in connection to drug trafficking activities and there was no evidence of legitimate business observed by law enforcement during their surveillance operations. *Id*.

    **e. Habeas Petition**

    Movant, proceeding *pro se*, filed the pending motion to vacate, set aside, or correct sentence per 28 U.S.C. § 2255 on December 19, 2022. With the judgment and conviction being upheld on October 4, 2022, Movant had 90 days to file a petition for a writ of certiorari to seek Supreme Court review. Sup. Ct. R. 13.1. Upon expiration of that 90-day period as of January 3, 2023,[16] the conviction became final for purposes of habeas review and Movant has one year to file a habeas petition. *See* 28 U.S.C. § 2255(f)(1) (setting out that petition needs to be filed within one-year from the date on which the judgment becomes final); *see also Clay v. United States*, 537 U.S. 522, 525 (2003) (holding that the judgment becomes final when the time expires for a petitioner to contest the appellate court's affirmation of the conviction in the Supreme Court). The filing was within this 90-day period of to file a writ, but with the lapse of said period and Movant not filing said writ, the judgment has become final for habeas review and this petition is now considered timely filed.

    This court has jurisdiction to review this habeas petition pursuant to 28 U.S.C. §§ 1331, 2255.

---

[16] The ninety-day deadline to file writ was January 2, 2023 (Monday), but since that was a federal holiday in observation of New Year's Day, the deadline expired the day after. *See* Sup. Ct. R. 30.1.

## II. SUMMARY OF THE PLEADINGS

### a. Movant's Habeas Petition

Movant has set out seven claims of ineffective assistance of counsel on the part of Trial Counsel as basis for writ of habeas corpus. The first four relate to Movant's entry of plea of guilty to the narcotic trafficking allegation and the last three relate to the sentencing hearing.

(1) Trial Counsel was ineffective in failing to contest the voluntariness of consent to search residence and vehicle and to contest related Fourth Amendment violation;

(2) Trial Counsel was ineffective in failing to contest *Miranda* rights violation and to move for suppression of statements obtained in violation of Movant's *Miranda* rights;

(3) Trial Counsel was ineffective for failure to investigate and in failing to file a *Brady* motion;

(4) Trial Counsel was ineffective in not advising as to maximum sentence and right to trial;

(5) Trial Counsel was ineffective in failing to contest two-level enhancement for use of premises;

(6) Trial Counsel was ineffective in failing to submit letter of acceptance of responsibility; and

(7) Trial Counsel was ineffective in failing to ask for reduction, downward department, and/or variance from guideline recommended sentence.

### b. Trial Counsel's Affidavit

Since Movant sets out claims of ineffective assistance of counsel by Trial Counsel, Respondent initially requested that said Trial Counsel provide an affidavit addressing said claims. (Civ. Dkt. No. 4.) Pursuant to court order, Trial Counsel filed an affidavit on May 4, 2023. (Civ. Dkt. No. 9.) Within said affidavit, Trial Counsel states that after being appointed to represent Movant, Trial Counsel and a legal assistant met with Movant on August 20, 2019, to review the allegations, facts and circumstances of traffic stop and search of residence, indictment, punishment, and Movant's personal history. (*Id.* at 2-3.) On August 21, 2019, Trial Counsel and legal assistant met with Movant's wife upon Movant's request. (*Id.* at 6.) On March 9, 2020, Trial Counsel, legal assistant, and Movant met with the Assistant U.S. Attorney (AUSA). (*Id.*) During

this meeting, Movant was able to view the evidence Government had against Movant with Trial Counsel. (Civ. Dkt. No. 9 at 10.) Trial Counsel explained in the affidavit that he was able to review the Government's file including statements from co-defendants, co-conspirators, and unidentified accomplices and then advised Movant of Government's evidence. (*Id*. at 9.) After reviewing Government's evidence, Trial Counsel and legal assistant had another meeting with Movant and Movant decided to enter a plea of guilty. (*Id*.) Prior to Movant's decision, Trial Counsel also discussed with Movant issues of Fourth Amendment violations in connection to search of his residence and vehicle. (*Id*. at 7.) Due to Movant's decision to plead guilty, all pretrial strategies were abandoned. (*Id*. at 8.) Subsequently, on June 15, 2020, Trial Counsel filed the Notice of Intent to Enter a Plea of Guilty. (Crim. Dkt. No. 140.)

Trial Counsel also states that he filed objections as to the two-level enhancement for utilization of junkyard as premises for drug-trafficking and as to the three-level role assessment on Movant's behalf, along with an acceptance of responsibility letter on behalf of Movant. (Civ. Dkt. No. 9 at 11, 13.)[17]

### c. Respondent's Reply

On May 26, 2023, Respondent filed a reply arguing that Movant is not entitled to any relief as claimed. (Civ. Dkt. No. 12.) Respondent assorts Movant's claims against Trial Counsel's ineffective performance into six areas: (1) failure to challenge the voluntariness of Movant's consent to search his home for illegal aliens; (2) failure to seek and obtain *Brady* material; (3) failure to seek and submit evidence challenging the application of sentencing enhancement for

---

[17] Trial Counsel filed as exhibits the following in support of the affidavit: Indictment, docket sheet, criminal complaint, bullet-point of re-arraignment procedures, notice of intent to plead guilty, plea agreement, Movant's acceptance of responsibility, and filed objections. (Civ. Dkt. No. 9, Exhibits 1-8.)

maintaining premises for purposes of narcotics trafficking; (4) failure to submit a written statement of acceptance of responsibility; (5) failure to challenge the admissibility of statements on grounds that law enforcement violated *Miranda* rights; and (6) failure to request a departure or variance under 18 U.S.C. § 3553(a) factors due to sentencing disparity between being held responsible for trafficking a mixture or substance containing methamphetamine and being held responsible for trafficking "Ice." (Civ. Dkt. No. 12 at 12.)

In regard to the claims that Trial Counsel was ineffective in failure to contest search of residence and obtain *Brady* material, Respondent argues that said claims are conclusory and contrary to the record. Respondent notes that Trial Counsel's affidavit and facts set forth within PSR establish a voluntary consent by Movant as to search of his residence. Respondent also submits that Trial Counsel's affidavit attested both Trial Counsel and Movant were able to meet with AUSA to review evidence and, afterwards, Trial Counsel cancelled review of further pretrial strategies because of Movant's decision to pursue a plea agreement. Moreover, Movant could not establish any prejudice or harm from alleged ineffective assistance of counsel. (*Id.* at 30).

In regard to the claims that Trial Counsel was ineffective as to the third and fourth areas identified by Respondent pertaining to sentencing hearing, Respondent argues these claims should fail because they are also conclusory and lack merits. Respondent cites Trial Counsel's affidavit that he objected to two-level premises enhancement in PSR and filed an acceptance of responsibility letter on Movant's behalf. (*Id.* at 34-36.). Similarly, Movant could not establish any prejudice or harm from alleged ineffective assistance of counsel. (*Id.* at 29, 31-33.)

In regard to claim that Trial Counsel failed to seek suppression of statements made by Movant while in custody but without *Miranda* warnings, Respondent argues that Movant could not establish any harm or prejudice since the Court could consider evidence at sentencing hearing

so long as it was reliable regardless of admissibility of evidence. Regardless, the record did not reflect that the Court even relied on said statements during the sentencing hearing. (Civ. Dkt. No. 12 at 37-38.) Further, Respondent argues that Trial Counsel was not ineffective in failing to address or seek a variance at sentencing hearing based on any discrepancies in the Drug Quantity Table between methamphetamine and "Ice" since the Fifth Circuit precedent has held there is no due process or equal protection violation as to such disparity or discrepancy. (*Id*. at 39-42.)

### d. Movant's Counter Reply

On July 5, 2023, Movant filed a motion in opposition to Respondent's memorandum. (Civ. Dkt. No. 13.) Movant again argues that Trial Counsel failed to investigate the circumstances surrounding the alleged consent to search house and vehicle and that Trial Counsel failed to investigate the circumstances surrounding whether *Miranda* warning was properly provided to Movant. (*Id*. at 6.) In support, Movant claims that this issue was brought up at the first hearing (preliminary/probable cause hearing) by Assistant Federal Public Defender who was appointed to represent Movant, but Trial Counsel failed to follow-up. (*Id.* at 4.) Movant also articulates that Trial Counsel did not discuss the voluntariness of any consent provided by Movant. (*Id*. at 2.) In his second main point, Movant argues that Trial Counsel failed to show him all relevant evidence and never told him the quantity and types of seizure drugs. (*Id.* at 8.) Thus, in Movant's view, the "plea was involuntary – not made knowingly and intelligently." (*Id*. at 9.) In third main point of the reply, Movant argues that Trial Counsel was ineffective in failing to object to additional narcotic loads Movant was found responsible for at sentencing and Trial Counsel failed to advise Movant that he could be responsible for such relevant conduct. (*Id*. at 11-15.) Finally, Movant summarizes that Trial Counsel failed to ensure that he was properly Mirandized by contesting the issue, failed to file motion to suppress as to consent provided, failed to challenge PSR as to quantity

of drugs Movant was held responsible for, failed to review "relevant conduct" with Movant, failed to object that guideline sentence was excessive, and that Trial Counsel urged Movant to plead guilty in exchange for a reduction for acceptance of responsibility but said reduction made no difference since Movant was held responsible for actions of others. (Civ. Dkt. No. 13 at 18.)

### III. RELEVANT LEGAL AUTHORITY

#### a. Summary Judgment Review

The Federal Rules of Civil Procedure apply if there is not a conflict with the federal rules governing habeas proceedings. *See Banister v. Davis*, 140 S. Ct. 1698, 1705 (2020) (citing Fed. R. Civ. P. 81(a)(4) and R. Gov. § 2255 Proceedings 12). Unless there is a noted conflict with the Federal Rules Governing § 2255 Proceedings, claims in habeas petition are reviewed under Fed. R. Civ. P. 56(a). Summary judgment is appropriate if the pleadings and evidence show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Once the moving party presents "a properly supported motion for summary judgment, the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (internal citation omitted). When reviewing, a district court must generally construe disputed facts in a light favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

#### b. 28 U.S.C. § 2255 Habeas Petition

"Following a conviction and exhaustion or waiver of the right to direct appeal, [courts] presume a defendant stands fairly and finally convicted." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (citing *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991)

(en banc), *cert. denied*, 502 U.S. 1076 (1992)). Thus, there are only four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence upon collateral review:

> (1) constitutional issues;
> (2) challenges to the District Court's jurisdiction to impose the sentence;
> (3) challenges to the length of a sentence exceeding the statutory maximum; and
> (4) claims that the sentence is otherwise subject to collateral attack.

28 U.S.C. § 2255(a); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). A petitioner, however, "may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *Shaid*, 937 F.2d at 232 (citing *United States v. Frady*, 456 U.S. 152, 168 (1982)). "This cause and actual prejudice standard presents 'a significantly higher hurdle' than the 'plain error' standard [applied] on direct appeal." *Id.* (citing *Frady*, 456 U.S. at 166). Thus, a movant must explain why the constitutional or jurisdictional claim was not brought up on direct appeal (the cause for the procedural default due to not appealing the issue) and the harm caused by said claim (the prejudice resulting from such claim). This "rigorous standard" is applied "to ensure that final judgments command respect and that their binding effect does not last only until the 'next in a series of endless postconviction collateral attacks.'" *Id.* (quoting *Frady*, 456 U.S. at 165-66). "A defendant must meet this cause and actual prejudice test even when he alleges a fundamental constitutional error." *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 493 (1986)). The Supreme Court allows an exception to this high bar of cause and prejudice for "extraordinary case[s]" where "a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Shaid*, 937 F.2d at 232. Further, "[o]ther types of error may not be raised under section 2255 unless the defendant demonstrates that the error could not have been raised on direct appeal, *and*, if condoned, would result in a complete miscarriage of justice." *Cervantes*, 132 F.3d at 1109 (emphasis in original)

(citing *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992)); *see also Shaid*, 937 F.2d at 232 n.7.

### c. Ineffective Assistance of Counsel

The Supreme Court has also held that an "ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Failure to raise an ineffective assistance of counsel claim on direct appeal is not a procedural default that must be excused only upon the showing of cause and prejudice. "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments" and requiring a Petitioner to bring an ineffective assistance of counsel claim on direct appeal "does not promote those objectives." *Id.*

Claims of ineffective assistance of counsel are analyzed under the well-known two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To satisfy the *Strickland* test, Petitioner is required to show that (1) his attorney's performance was deficient because it fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced his defense. *Id.* at 689-94. "Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim." *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997). Thus, "[a] court need not address both components of the inquiry if the [petitioner] makes an insufficient showing on one." *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994).

The first prong requires a petitioner to show that the alleged errors of counsel were so serious that the assistance received was "below the constitutional minimum guaranteed by the Sixth Amendment." *United States v. Faubion*, 19 F.3d 226, 228 (5th Cir. 1994) (citing *Strickland*,

466 U.S. at 687). The "constitutional minimum is measured against an objective standard of reasonableness." *Id.* (citing *Strickland*, 466 U.S. at 688). An ineffective assistance of counsel claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence[.]" *Strickland*, 466 U.S.at 689-90.

The second prong requires that a petitioner "demonstrate that her counsel's performance so prejudiced her defense that the proceeding was fundamentally unfair." *Faubion*, 19 F.3d at 228 (citing *Strickland*, 466 U.S. at 688). To show such prejudice, a Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. To establish such prejudice in connection with a guilty plea, a defendant bears the burden of demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

To establish such prejudice within the punishment phase of a non-capital case, a defendant must demonstrate that he was subjected to increased jail time due to counsel's deficient representation. *United States v. Grammas*, 376 F.3d 433, 438-39 (5th Cir. 2004) (citing *Glover v. United States*, 531 U.S. 198, 203 (2001)). In other words, a petitioner must establish that the petitioner would have received a different sentence if counsel objected to PSR. *Akpan v. United States*, No. 3:04-CR-36-L, 2013 WL 439850, at *11 (N.D. Tex. Aug. 14, 2013); *see also United States v. Beaudion*, No. CR-17-00319-01, 2021 WL 4097013, at *2 (W.D. La. Sept. 8, 2021) ("When asserting errors concerning sentencing, the petitioner must show that he would have received less time in prison had it not been for his counsel's errors.").

**d. *Pro se* Movants**

Pleadings filed by a *pro se* litigant are held to less stringent standards than those drafted by practicing attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997); *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472 & n.16 (5th Cir. 1996). *Pro se* movants proceed without an attorney, accordingly, *pro se* movants are entitled to a more liberal construction of his filings. "It is the substance of the relief sought by a *pro se* pleading, not the label that the petitioner has attached to it, that determines the true nature and operative effect of a habeas filing." *Hernandez v. Thaler*, 630 F.3d 420, 426-27 (5th Cir. 2011) (citations omitted). While *pro se* movants are entitled to some leniency, they "must still plead factual allegations that raise the right to relief above the speculative level." *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019).

## IV. ANALYSIS

### a. Ineffective Assistance of Counsel – Pretrial Investigation & Plea

Movant has set forth several claims of ineffective assistance of counsel that, in sum, are essentially in support of claim that plea of guilty was not a constitutionally valid one that was knowingly entered into by Movant and that Trial Counsel did not fully investigate and litigate on behalf of Movant.

1. **Claim of Ineffective Assistance of Counsel in Failing to Contest the Voluntariness of Consent to Search and Fourth Amendment Violation**

Within the habeas petition, Movant claims that Trial Counsel was ineffective in failing to contest the voluntariness of the consent to search the residence and vehicle provided by Movant, failing to contest the actual search of the residence and vehicle, and failing to contest the alleged scope of the search. (Civ. Dkt. No. 1 at 19, 21-25.) To succeed on a claim that counsel failed to

raise a Fourth Amendment issue, "Movant must meet the same cause and actual prejudice standard set forth in *Strickland*." *Kroma v. United States*, No. 4:14-CR-165, 2021 WL 2229733, at *7 (E.D. Tex. Mar. 2, 2021).

> To demonstrate actual prejudice when a movant's ineffective assistance claims are based on counsel's failure to file a motion to suppress, "the movant must also provide that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent excludable evidence. . . ."

*Id.* (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

As facts and circumstances surrounding Movant's arrest outlined above, there is no indication that Movant did not voluntarily consent to the challenged searches. A review of the preliminary hearing reveals that case agent testified that Movant provided both verbal and written consent to search his residence and vehicle. Thus, Movant's challenge of the voluntariness of the consent to search his home and vehicle is unfounded and contrary to the record.

As to Movant's claim of Trial Counsel's ineffective assistance in not raising a Fourth Amendment claim, deference is provided to Trial Counsel and his decision making. *See Strickland*, 466 U.S. at 689 (holding that judicial scrutiny of counsel's performance must be highly deferential and courts should strongly presume that counsel's conduct falls within the wide range of reasonable professional assistance). Based on Trial Counsel's affidavit, Trial Counsel and Movant reviewed the evidence against Movant concerning the issue of the traffic stop and consent to search residence. It was after the meeting with the AUSA where Movant reviewed the evidence against him in person, Movant changed his decision from pleading not guilty to pleading guilty. (Civ. Dkt. No. 9 at 2-4). Accordingly, Trial Counsel set aside all other pretrial issues. Trial Counsel's conduct, under the circumstance, was an informed strategic choice. *See Strickland*, 466

U.S. at 689 (holding that the defendant must overcome the presumption that counsel's challenged action might be a sound trial strategy) (internal citation omitted).

In support of this claim, Movant submits that Trial Counsel could have reviewed the preliminary hearing transcript where Movant's first counsel addressed the consent issue.[18] (Civ. Dkt. No. 13 at 4.) Movant contends that his first attorney raised the issue of limited consent that he only consented to search the residence when he was present. (*Id.*) A review of hearing transcript shows that, contrary to Movant's claims, no testimony or evidence was located that Movant did not voluntarily consent to search the residence or in any way limited his consent. Said testimony followed the facts and circumstances outlined by the case agent within the criminal complaint. Thus, there was no evidence for Trial Counsel to follow-up as Movant claimed.

The facts and circumstances set out in the record suggest it was reasonable for Trial Counsel not to file a meritless claim. Outside of unsubstantiated, self-serving statements, no facts or circumstances have been set forth that implies a meritorious challenge to the voluntariness of consent or a meritorious Fourth Amendment claim. Movant's claims are conclusory in nature and such "conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (quoting *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)). Thus, having failed to establish Trial Counsel's performance was constitutionally deficient, it is recommended that these claims should be dismissed.

---

[18] Movant states that "first counsel, a female lawyer, informed the Judge at arraignment that her client had not been Mirandized." (Civ. Dkt. No. 13 at 4.) A review of the docket reveals a preliminary hearing was held on August 6, 2019, and as noted, Movant was initially represented by the Federal Public Defender's Office. Afterwards, the assigned public defender withdrew, and Trial Counsel was appointed before former arraignment. Thus, Movant appears to be referencing the preliminary hearing.

2. **Claim of Ineffective Assistance of Counsel in Failing to Contest *Miranda* Rights Violation and to Move for Suppression of Statements Obtained in Violation of Movant's *Miranda* Rights**

Movant claims that Trial Counsel was ineffective in failing to challenge the wavier of *Miranda* rights and failing to move to suppress multiple statements given in violation of Movant's *Miranda* rights. (Civ. Dkt. No. 1 at 21-25.) Similar to Movant's previous claims, his challenge of waiver of *Miranda* rights lacks factual support. The record reveals no facts and circumstances surrounding Movant's arrest that Movant did not voluntarily waive the *Miranda* rights. On the contrary, the record shows after being provided *Miranda* warnings, Movant voluntarily agreed to speak with federal agents at the scene and after the seizure of narcotics. *See* Crim. Dkt. No. 320. And agents acceded to Movant's request to terminate the interview immediately upon his request. (*Id.*) The preliminary hearing transcript also reveals case agent testified that Movant provided both verbal and written waiver of his *Miranda* rights before he spoke with the agents after the initial traffic stop. (*Id.*)

Based on the record and the transcript, Movant has set out no facts or circumstances, besides unsubstantiated statements, to show that had Trial Counsel decided to file a motion to suppress statements provided by Movant, said motion would have had succeeded on the merits. Movant's claims are conclusory in nature and are insufficient to raise a constitutional issue. *See Pineda*, 988 F.2d at 23. Nothing within the record establishes that the actions of counsel were either unreasonable or deficient. *See Kroma*, 2021 WL 2229733, at \*8; *see also United States v. Garcia-Cisneros*, 381 F. App'x 335, 336 (5th Cir. 2010) (holding that counsel was not ineffective for failing to file motion contesting statements provided without proper *Miranda* warnings as facts establish that government complied with *Miranda* and any such motion would have been meritless)). Furthermore, Movant's informed decision of guilty plea renders further pretrial

motions futile and investigation unnecessary. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (noting that "counsel has a duty to make reasonable investigations or to make reasonable decision that makes particular investigation unnecessary" and that "heavy measure of deference must be applied to counsel's judgments" (quoting *Strickland*, 466 U.S. at 691)).

Similar to the previous claim, it is recommended that Movant's claims of ineffective assistance of counsel in failing to contest *Miranda* rights violation should be dismissed because Movant has failed to establish that Trial Counsel's performance was deficient and failed to connect Trial Counsel's alleged deficient performance to any prejudice or harm.

3. **Claim of Ineffective Assistance of Counsel for Failure to Investigate and in Failing to File a *Brady* Motion**

Movant also submits that Trial Counsel was ineffective in failing to effectively investigate the case. In essence, Movant argues that Trial Counsel failed to file a *Brady* motion, requesting material or other expert reports regarding the evidence underlying Movant's charges and conviction before the guilty plea was entered. (Civ. Dkt. No. 1 at 28-30.) To establish such a claim of ineffectiveness, Movant "must allege with specificity what the investigation would have revealed and how it would have benefited him." *United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000). Movant has failed to set out in any detail what further investigation would have revealed or how it would have benefited him to establish that Trial Counsel's performance was not only deficient but prejudicial to him. *See Green*, 882 F.2d at 1002-03. Furthermore, the allegations that the issues were addressed at preliminary hearing and Trial Counsel could have followed up with previous counsel are contradicted by the actual proceedings. Therefore, this claim of ineffective assistance of counsel fails because Movant cannot establish Trial Counsel was deficient in his representation and should be denied. *See United States v. Canon*, No. MO:08-CR-00208(5)-RAJ, 2012 WL 12986495, at *3 (W.D. Tex. May 9, 2012) (denying claim of ineffective assistance

of counsel due to counsel failing to file motion for *Brady* material as defendant did not point to any exculpatory evidence outstanding that could have been used to show government could not meet the elements of the crime or impeach a witness testifying against defendant); *see also Araujo v. United States*, No. 3:16-CR-00478-M-2, 2022 WL 3088383, at *4-5 (N.D. Tex. June 1, 2022) (same), *report and rec. adopted*, No. 3:16-CR-00478-M-2, 2022 WL 3081826 (N.D. Tex. Aug. 3, 2022), *certificate of appealability denied*, No. 22-10927, 2023 WL 3272414 (5th Cir. Jan. 26, 2023), *cert. denied*, No. 22-7713, 2023 WL 6378263 (U.S. Oct. 2, 2023).

### 4. Claim of Ineffective Assistance of Counsel in Not Advising as to Maximum Sentence and Right to Trial

Movant also claims that Trial Counsel was ineffective in failing to inform or otherwise explain to Movant the maximum sentence and other risks as to pleading guilty and that Trial Counsel failed to inform Movant of the benefits of invoking his right to trial. Similar to claims discussed above, this claim is also conclusory in nature and should be denied. *See Pineda*, 988 F.2d at 23.

A guilty plea is valid and will be upheld on habeas review if said plea is entered into knowingly, voluntarily, and intelligently by a defendant. *United States v. Hernandez*, 234 F.3d 253, 255 (5th Cir. 2000). A guilty plea is "knowingly" entered when the defendant has a "full understanding of what the plea connotes and of its consequence." *United States v. Lincks*, 82 F.4th 325, 2023 WL 5948758, at *3 (5th Cir. 2023) (quoting *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)).[19] "The defendant need only understand the direct consequences of the plea." *Hernandez*,

---

[19] In Fifth Circuit's recent decision, the court re-emphasized that the "knowing" and "voluntary" requirements are different concepts. *United States v. Lincks*, 82 F.4th 325, 2023 WL 5948758, at *3 (5th Cir. 2023). The "voluntary" requirement needs to be addressed when a guilty plea is allegedly "induced by threats, improper coercion, false or empty promises, and the like." *Id*. Here, construing Movant's allegation liberally and in a favorable manner, Movant only alleges his plea was not entered "knowingly" in the criminal proceeding.

234 F.3d at 255. In other words, he need only know the maximum sentence for the offense charged. *Lincks*, 2023 WL 5948758 at *3; *see also Jackson v. Andrews*, 31 F. App'x 833, 2002 WL 180375, at *2 (5th Cir. 2002) (per curiam) ("On federal habeas review, as long as the defendant was informed of the maximum term of imprisonment, this satisfies the requirement that the defendant be fully aware of the consequences of his plea." (Internal citations omitted)).

Movant tries to contend his guilty plea is "involuntary"[20] because Trial Counsel blindsided him by the statutory maximum sentence. The hearing transcript belies Movant's contention. Prior to the acceptance of the plea of guilty, the Court confirmed with Movant, under oath, that he had reviewed the charges with Trial Counsel (Crim. Dkt. No. 282 at 8), that Movant understood he had a right to trial and all rights associated with trial (*id*. at 13-17), that Movant understood the potential punishment of 10 years to life imprisonment and a fine up to $10,000,000 (*id*. at 17), that Movant had reviewed the Sentencing Guidelines with Trial Counsel (*id*. at 20), that Movant understood the Sentencing Guidelines recommendation was non-binding in nature (*id*. at 21), and, with all this explained, that Movant still wanted to go forward with a plea of guilty (*id.* at 25).

The record establishes that Movant knowingly entered the plea because he understood both the connotations and consequences of the plea. *Lincks*, 2023 WL 5948758 at *3; *United States v. Urias-Marrufo*, 744 F.3d 361, 366 (5th Cir. 2014) (noting that for a guilty plea to be knowing and intelligent, a defendant must be provided notice of the nature of the charges against him, the consequences of his plea, and the nature of the constitutional protections Movant is waiving); *Araromi v. United States*, No. EP-09-CR-3143-kc-1, 2014 WL 1652595, at *11 (W.D. Tex. Apr. 23, 2014) (same). Furthermore, Movant's formal declarations in open court are solemn and "carry a strong presumption of verity," which "constitute a formidable barrier in any subsequent collateral

---

[20] *See supra* n.19.

proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Outside the conclusory allegations, Movant has not submitted anything to place into question his responses at the formal re-arraignment. *See United States v. Garcia*, No. MO13CR001281RAJ, 2016 WL 4777417, at *7 (W.D. Tex. Mar. 14, 2016) (noting that a defendant's testimony at the plea hearing, under oath, can refute allegations of ineffective assistance within "the plea context."). Movant is unable to establish deficient performance on part of Trial Counsel and it is recommended that this claim should be dismissed.

### b. Ineffective Assistance of Counsel – Sentencing Hearing

Movant's next set of claims of ineffective assistance pertains to Trial Counsel's advocacy on Movant's behalf at the sentencing hearing.

### 1. Claim of Ineffective Assistance of Counsel in Failing to Contest Two-Level Enhancement for Use of Premises

Movant claims Trial Counsel was ineffective in failing to advocate that two-level enhancement for use of premises in connection to drug trafficking should not apply to Movant. (Civ. Dkt. No. 1 at 32.) However, the record establishes otherwise – Trial Counsel, in both written objections and at the sentencing hearing, contested the application of this two-level enhancement per U.S.S.G. § 2D1.1(b)(12). Thus, Movant's contention that Trial Counsel did not object to the two-level enhancement for use of premises is not supported by the record.

The District Court overruled Trial Counsel's objection and applied two-level enhancement for use of premises. This matter was appealed to the Fifth Circuit and the District Court's finding was upheld. *See Gutierrez-Muñoz*, 2022 WL 5102009, at *2. The fact that the District Court did not agree with counsel's argument does not mean that counsel was deficient. *See Domanguera v. United States*, No. CIV. 06-00580JMSKSC, 2007 WL 461307, at *7 (D. Haw. Feb. 7, 2007); *see*

*also McCall v. United States*, No. 2:08-CR-57, 2015 WL 7722027, at *6 (E.D. Tenn. Nov. 30, 2015) ("The fact that this court did not agree with [counsel] does not mean that [counsel] provided deficient representation.").

Movant also submits that Trial Counsel was ineffective in failing to submit any evidence to establish the legitimacy of Movant's junkyard business. But, again similar to previous claims and as noted by Respondent (Civ. Dkt. No. 12 at 35), Movant does not set out what evidence could have been presented and how that would have benefited Movant. *See Araromi,* 2014 WL 1652595, at *21 ("When a petitioner argues that his or her counsel rendered ineffective assistance by failing to introduce evidence to rebut a presentence investigation report, the petitioner must identify the missing evidence and demonstrate how the evidence casts doubt on the information set forth in the report."). As such, Movant's allegation that Counsel failed to sufficiently argue and present evidence as to the noted two-level enhancement is conclusory in nature. And, considering the enhancement was upheld on appeal based on review of the record, it would be difficult to establish prejudice as to Trial Counsel's alleged deficient performance.

For these reasons, it is recommended that this claim should be dismissed.

2. **Claim of Ineffective Assistance of Counsel in Failing to Submit Acceptance of Responsibility**

Movant claims that Trial Counsel was ineffective in failing to submit to the probation office, in writing, a statement regarding Movant's acceptance of responsibility before or during sentencing. (Civ. Dkt. No. 1 at 33-34.) The record establishes that Trial Counsel submitted an affidavit of acceptance of responsibility on behalf of Movant by November 19, 2021. (Crim. Dkt. No. 269.) At the sentencing hearing, Court acknowledged said affidavit of acceptance of responsibility and reduced the sentencing by two-levels pursuant to U.S.S.G. § 3E1.1. Court further reduced the sentencing level by another one-level on motion of the Government. Therefore,

Movant's claim of ineffective assistance of counsel in failing to submit an acceptance of responsibility is baseless, and this claim should be dismissed.[21]

3. **Claim of Ineffective Assistance of Counsel in Failing to Ask for Role Reduction, Downward Departure, and Variance**

Movant claims that Trial Counsel was ineffective in failing to seek a role adjustment, failing to ask for a downward departure based on conflicting policy disputes regarding assessment of methamphetamine within the Sentencing Guidelines, and failing to seek a variance under 18 U.S.C. § 3553(a) factors. (Civ. Dkt. No. 1 at 14, 39-42.)

As to role adjustment, similar to the claim about acceptance of responsibility, Trial Counsel did argue by motion and at the sentencing hearing that two-level assessment per U.S.S.G. § 3B1.1(c) was more appropriate than the three-level assessment per U.S.S.G. § 3B1.1(b); and the Court even noted that it would consider said assessment. (Crim. Dkt. No. 238 at 12.) After consideration, the Court did not agree with Trial Counsel and denied the motion. However, this does not show Trail Counsel was ineffective. *See McCall*, 2015 WL 7722027, at *6. Nor, based on the record, would Movant be able to show any prejudice even if one were to assume Trial Counsel was ineffective.

_____

[21] Movant also sets out that Trial Counsel was ineffective for obtaining "safety-valve." (Civ. Dkt. No. 1 at 8.) "Safety-valve" is a statutory mechanism that limits the applicability of statutory minimum in certain cases if five qualifications have been met. *See* 18 U.S.C. § 3553(f). It is also set out in the Guidelines. *See* U.S.S.G. § 5C1.2; *see also U.S. v. Fo*, 226 F. App'x 346, 347 (5th Cir. 2007) (per curiam). "The defendant has the burden of establishing eligibility for safety-valve reduction, including showing he truthfully provided the Government with all relevant information and evidence regarding the offense." *Id.* at 347 (citing *United States v. Flannigan*, 80 F.3d 143, 146-47 (5th Cir. 1996)); *see also* 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5) (setting out this fifth qualification). In Movant's case, PSR reflected Movant failed to meet this qualification since Movant did not debrief. (Crim. Dkt. No. 183 at 29, ¶106.) Outside of the reported claim, Movant has not set forth how Trial Counsel failed to argue that Movant qualified for "safety-valve". Without more, such a conclusory allegation is insufficient to set forth a constitutional claim. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).

It is well established that sentencing courts may consider sufficiently reliable and relevant evidence without regard to its admissibility under the rules of evidence. *United States v. Ramirez*, 367 F.3d 274, 277 (5th Cir. 2004). A PSR "generally bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." *United States v. Nava*, 624 F.3d 226, 231 (5th Cir. 2010) (quoting *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007)).

In this matter, a three-level enhancement is warranted when an individual is a manager or supervisor, and the criminal activity involves five or more participants. U.S.S.G. § 3B1.1(b). To qualify for an adjustment under U.S.S.G. § 3B1.1, Movant "need only 'have been the organizer, leader, manager, or supervisor of *one or more* participants,' and need not have supervised or organized all five participants in the criminal enterprise." *United States v. Dickerson*, 909 F.3d 118, 127 (5th Cir. 2018) (quoting U.S.S.G. § 3B1.1, comment. n.2). In fact, "[t]he district court is 'free to count the defendant himself as one 'participant' in the criminal transaction.'" *Id.* (citing *United States v. Barbontin*, 907 F.2d 1494, 1498 (5th Cir. 1990)).

At the sentencing hearing, the Court noted that "given the number of people involved here, he would get the plus three." (Crim. Dkt. No. 283 at 13.) The facts within PSR reveal that Movant worked with Cesar Alexis Herrera Flores and Pedro Gonzalez to receive and distribute narcotics; Movant hired Alexandra Briones and others such as co-conspirator #1 to transport the narcotics, and still worked with co-conspirator #2 to seal the narcotics in metal boxes at his junkyard before being concealed in vehicles for transportation and distribution. Absent information showing such facts unreliable, the sentencing Court appropriately applied the three-level assessment based on facts within PSR despite Trial Counsel's arguments. In short, Movant cannot establish any prejudice even if one were to consider Trial Counsel deficient in his representation. Thus, it is

recommended that Movant's claim of ineffective assistance of counsel in failing to seek a role adjustment should be denied.

As to departure or variance, Movant argues that Trial Counsel should have argued for a departure or variance since the "methamphetamine guidelines overstate the seriousness of his conduct." (Civ. Dkt. No. 1 at 37.) In particular, the "U.S. Sentencing Guidelines Manual 2D1.1's Drug Quantity Table reflects a 10-to-1 sentencing disparity between pure methamphetamine and mixture or non-pure methamphetamine." (*Id.*) Due to this disparity, Trial Counsel should have argued for a departure or variance from the guideline sentence of 360 months. (*Id.*) As a corollary to this argument, Movant submits that Trial Counsel should have argued that recommended guideline sentence was excessive under 18 U.S.C. § 3553(a) sentencing factors. (*Id.* at 40.) As noted by Respondent, a quick survey of Fifth Circuit precedents shows that Movant's claim is unwarranted. The Fifth Circuit has consistently held that such disparity does not violate due process or equal protection principals under the Constitution.

In *United States v. Molina*, the Fifth Circuit held that the 10:1 sentencing disparity between "Ice" and methamphetamine within the Sentencing Guidelines is both rational and reasonable. 469 F.3d 408, 413 (5th Cir. 2006). The defendant initially argued that the 10:1 disparity is irrational; in rejecting that argument, the Fifth Circuit relied upon the Sevent Circuit Court of Appeals decision in *Turner*:

> We agree with the district court that the 10:1 ratio is supported by a rational basis because the pure product is more concentrated and can be cut into larger quantities for resale. Methamphetamine, as it is produced through normal chemical process, contains a number of impurities that can be removed through further processing. The finished product can be cut into larger quantities for resale. Accordingly, the sentencing scheme for methamphetamine punishes more severely the sophisticated cooks who could otherwise manipulate the Guidelines by producing smaller quantities of more concentrated methamphetamine. We are unable *to conclude that Congress lacked a rational basis when it elected to punish drug offenses involving pure methamphetamine more severely.*

*Molina*, 469 F.3d at 413 (quoting *United States v Turner*, 93 F.3d 276, 287 (7th Cir. 1996) (emphasis added)). Further, the application of said ratio is pursuant to the Sentencing Guidelines based on the weight and purity of the narcotics seized. *Id*. at 414. Therefore, the application of said ratio is not a violation of the due process and is appropriate. *Id*.

In *United States v. Aparicio*, the Fifth Circuit noted that "the Guidelines advise the district court to apply the offense level determined by the weight of the pure methamphetamine in the mixture or substance [even] if doing so would result in a higher offense level." 963 F.3d 470, 475 (5th Cir. 2020) (citing U.S.S.G. § 2D1.1(c), comment. n.(B)). Therefore, "the district court did not err – plainly or otherwise – in applying the undisputed pure methamphetamine weight to the Drug Quantity Table to determine [defendant's] base offense level." *Id.* Nor is it due process violation when a defendant pleads guilty to drug trafficking offense involving a mixture or substance containing methamphetamine but is then held responsible for a purer form of methamphetamine referred to as "Ice" since such a sentence does not "affect the statutory penalty" of the crime and is thus "not an 'element' of the offense." *Id.* (quoting *United States v. Clark*, 199 F. App'x 392, 393 (5th Cir. 2006)). In other words, when a defendant, at re-arraignment, admits to knowingly and intentionally possessing with intent to distribute methamphetamine, the elements of the charged offense under 21 U.S.C. § 841(a) are met and the defendant may be held accountable for "Ice" so long as the statutory penalty is not affected. *Compare* 21 U.S.C. § 841(b)(1)(A)(viii) (setting statutory penalty for possession with intent to distribute 500 grams or more of mixture of substance containing methamphetamine at 10 years to life imprisonment), *with* 21 U.S.C. § 841(b)(1)(B)(viii) (setting statutory penalty for possession with intent to distribute 50 grams or more of mixture of substance containing methamphetamine at 5 to 40 years imprisonment).

In *United States v. Nunez*, the Fifth Circuit also held the sentencing disparity created by the ten to one ratio between "Ice" and a mixture or substance containing less pure form of methamphetamine is neither irrational nor arbitrary and thus does not violate the equal protection clause. 371 F. App'x 478, 479 (5th Cir. 2010). In other words, a sentence based on the Drug Quantity Table is reasonable, rational, and does not run afoul of the U.S. Constitution.

At re-arraignment, Movant, under oath, acknowledged that he understood he was pleading guilty to possession with intent to distribute 500 grams or more of mixture or substance containing methamphetamine and that punishment, by statute, was 10 years to life. (Crim. Dkt. No. 282 at 9-10, 17.) Upon application of the Sentencing Guidelines, some of the methamphetamine, by lab report, was determined to be "Ice."[22] For that reason, under the Sentencing Guidelines, Movant was held responsible for that substance at 10:1 ratio compared to the less pure methamphetamine.[23] Under Fifth Circuit precedents, it was reasonable for a Court to follow the Guideline recommendation and it would have been futile for Trial Counsel to argue about the noted disparity. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("[The Fifth Circuit] has made clear that counsel is not required to make futile motions or objections." (citing *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) (per curiam)); *see also United States v. Espinoza*, 697 F. App'x 308, 309 (5th Cir. 2017) (per curiam).

Trial Counsel was not deficient in his duties as claimed by Movant for failing to ask for noted downward departure or variance and this claim should be dismissed as well.

---

[22] *See supra* n.10.

[23] Under the Drug Conversion Table for "Converted Drug Weight", 1 gram of methamphetamine is converted to 2 kilograms of "converted drug weight" and 1 gram of "Ice" is converted to 20 kilograms of "converted drug weight"; thus, setting out the 10:1 ratio in question. U.S.S.G. § 2D1.1, comment. n.8(D).

4. **Claim of Ineffective Assistance of Counsel in Failing to Object to Relevant Conduct**

In Movant's response, Movant makes an additional argument that Counsel was ineffective in failing to object to the drug amount Movant was responsible for at the sentencing hearing. (Civ. Dkt. No. 13 at 11.) Movant articulates that the additional loads were not reasonably foreseeable to him, and Counsel should have argued as such. (*Id.* at 12)

The base offense level for a drug trafficking offense is calculated by the quantify of drugs involved in the offense, in this case, 31 kilograms of methamphetamine as Movant pled guilty to, and other drugs attributable to Movant as relevant conduct. *Espinoza*, 697 F. App'x at 309 (citing U.S.S.G. §2D1.1 comment. n.5; U.S.S.G. § 1B1.3(a); *United States v. Wall*, 180 F.3d 641, 644-45 (5th Cir. 1999)).[24] Relevant conduct can include those allegations for which a defendant has been indicted but not convicted of and as well as counts that have been dismissed against a defendant. *Espinoza*, 697 F. App'x at 309. Conduct that is "within the scope of the jointly undertaken activity," "in furtherance of that criminal activity," and "reasonably foreseeable in connection with the criminal activity" is considered relevant conduct. *See* U.S.S.G. § 1B1.3, comment. n.3(A).

Again, as outlined in the plea agreement and reviewed with Movant in open court, Movant pled guilty to conspiring with others on July 31, 2019. Based on the facts and circumstances outlined within PSR, for which the Court can rely on and make implicit findings, *United States v. Smith*, No. CIV A 03-1020, 2009 WL 2461617, at *6 (W.D. La. Aug. 10, 2009), Movant was held responsible for three other seizures. First, Movant was held responsible for seizure of cocaine and methamphetamine on August 2, 2018. These seizures were reasonably foreseeable to Movant considering what the agents observed between Pedro Gonzalez and Movant and statement by

---

[24] "Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level." U.S.S.G. § 2D1.1, comment. n.5 (citing U.S.S.G. § 1B1.3(a)(2) (Relevant Conduct)).

Pedro Gonzalez that he delivered the narcotics to Movant and others. (Crim. Dkt. No. 183 at 6-7, ¶¶19-22.) Second, Movant was held responsible for seizure of narcotics (methamphetamine and heroine) from Alexandra Briones on October 19, 2018. Again, based on PSR, considering Movant's relationship with Alexandra Briones and that Movant assisted in the bond release of both Alexandra Briones and her mother, it was appropriate for the Court to conclude that these seizures were also reasonably foreseeable to Movant. (*Id.* at 7, ¶¶23-25.) Third, as to the seizure of narcotics (heroin and cocaine) on November 13, 2018, based on the statement of the noted co-conspirators and fact that Alexandra Briones appeared to have been providing counter-surveillance for Movant, it was also appropriate to conclude that this seizure was reasonably foreseeable to Movant. (*Id.* at 8-9, ¶¶26-31.) In each of three instances, evidence was presented to show Movant's connection with and role in the drug trafficking activity of others and that said activity was in the course of conduct of the conspiracy, in furtherance of the conspiracy, and reasonably foreseeable to Movant. Therefore, it would have been futile for Trial Counsel to lodge any objection and Trial Counsel was not deficient in failing to object to said relevant conduct. *See Koch*, 907 F.2d at 527; *see also Roberts v. Thaler*, 681 F.3d 597, 611 (5th Cir. 2012).

Movant's conclusory statements about Trial Counsel allegedly not reviewing these issues with him are also insufficient to raise and establish a constitutional issue. *See Pineda*, 988 F.2d at 23. Once again, such conclusory statements do not overcome Movant's statements, made under oath, at re-arraignment that he reviewed the sentencing guidelines with Trial Counsel (Crim. Dkt. No. 282 at 20) prior to entering a plea of guilty; and his statements at sentencing hearing that Movant reviewed the presentence investigation report with Trial Counsel (Crim. Dkt. No. 283 at 3) prior to being sentenced. *See Blackledge*, 431 U.S. at 74; *see also Kroma*, 2021 WL 2229733, at *13.

This additional claim of ineffective assistance of counsel should be dismissed.

### c. Evidentiary Hearing

A habeas motion may be resolved without an evidentiary hearing where "the motion, files, and record of the case conclusively show that no relief is appropriate." *United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983) (citing Rules Governing Section 2255 Proceedings 4(b)). A court does not abuse its discretion when denying a habeas petition without hearing when Movant's assertions are merely conclusory allegations or are otherwise "inconsistent with the bulk of [his] conduct." *United States v. McDaniels*, 907 F.3d 366, 370 (5th Cir. 2018) (internal citation omitted) (holding that evidentiary hearing was not warranted when movant's argument are "unavailing"); *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam) (holding that a habeas motion should be denied without hearing where the movant's assertions of ineffective assistance were wholly conclusory in nature and refuted by reference to the record itself).

Based on the pleadings and record as outlined, Respondent has established that the claims of ineffective assistance of counsel within the habeas petition do not raise any genuine issues of material fact and summary judgment is warranted. Fed. R. Civ. P. 56(a). Since the record is adequate to dispose fully and fairly of Petitioner's claims, no evidentiary hearing is necessary. In other words, summary dismissal in favor of Respondent is appropriate without further hearings as the record establishes that there is no genuine issue as to any material facts as claimed by Movant within the habeas petition for noted reasons. *Cf. United States v. Hernandez-Zavala*, 984 F.3d 457, 458 (5th Cir. 2021) (holding that district court does not error in declining to offer *sua sponte* a § 2255 movant an opportunity to amend before summarily dismissing the matter).

## CONCLUSION

### *Recommended Disposition*

After careful review of the record and relevant law, the undersigned recommends that Movant's § 2255 motion (Civ. Dkt. No. 1) be **DENIED** and this *pro se* civil action be **DISMISSED with prejudice**, and the case be closed.

### *Certificate of Appealability*

It is recommended that the District Court deny a certificate of appealability. Because the undersigned recommends the dismissal of this action, it must be addressed whether Movant is entitled to a certificate of appealability (COA). The Rules Governing Section 2255 Proceedings instruct that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. Gov. Sec. 2255 Proceedings, Rule 11. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).

A petitioner is entitled to a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). For claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying the *Slack* standard to a COA determination in the context of a § 2255 proceeding). An applicant may also satisfy this standard by showing that "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *see also Jones*, 287 F.3d at 329.

Movant has set out several claims of ineffective assistance of counsel. Based on review of the record and relevant case law, for noted reasons, Trial Counsel was neither deficient in his representation of Movant nor, even assuming any deficiency, Trial Counsel's actions were not prejudicial to Movant. Thus, reasonable jurists would not find court's assessment of the constitutional claims debatable or wrong. *Slack*, 529 U.S. at 484 (2000); *Wilkins v. Stephens*, 560 F. App'x 299, 314-15 (2014) (holding that petitioner's COA can be denied because he failed to establish both prongs of an ineffective assistance claim under *Strickland*).

Accordingly, the request for COA should herein be **DENIED**.

### *Notice to the Parties*

The Clerk shall send copies of this Report and Recommendation to Movant, who has fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file written objections to the proposed findings and recommendations contained in this report within 14 days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings and legal conclusions accepted or adopted by the District Court, except on grounds of plain error. *See Douglas v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

The Clerk shall provide copies of this order to Petitioner and counsel for Respondent.

**DONE** at McAllen, Texas, on 20th day of October 2023.

Juan F. Alanis
United States Magistrate Judge